**534**

The SQUIRE, INC., a Utah Corporation, and Harvey Smith, an Individual, Plaintiffs and Appellants,

v.

Lynn H. COOMBS, Defendant and Respondent.

No. 14072.

Supreme Court of Utah.

Jan. 30, 1976.

James R. Brown, of Jardine, Baldwin, Brown & Sessions, Salt Lake City, for plaintiffs and appellants.

Reed A. Watkins, of Watkins & Faber, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

A joint venture agreement was entered into by and between Lynn H. Coombs and Vista International Corporation (hereafter referred to as Vista) for the purpose of subdividing some land owned by The Squire, Inc. Mr. Coombs owned all of the stock of The Squire and, as a part of the agreement, he transferred all of The Squire stock to Vista. The parties further agreed that the joint venture would be effectuated through the Squire Corporation. Thus both parties could use the corporate entity of The Squire as a shield from liability. They further agreed that all net profits from the joint venture would be divided 40% to Coombs and 60% to Vista.[1]

This action was brought by Mr. Smith, the assignee of Vista's interest in the joint

---

[1]. It is difficult to see how the profits of the corporation could be divided other than as dividends based upon the stock held; how-ever, that point was neither raised below nor here on appeal. The appellant, Harvey Smith, now owns all of the stock of The Squire, Inc.

venture agreement against Mr. Coombs, the other joint venturer. A counterclaim was filed and both parties sought an accounting.

■ The case was tried to a jury and thereafter a new trial was granted and the matter tried to the court based upon the record at the jury trial. The court found that the original agreement had been modified by a subsequent agreement and that the claim of Smith and The Squire was not sustained. The evidence sustains this finding. However, the court also found that 40% of the "net profit" due Coombs meant "net profit before income taxes paid by the Squire, Inc." and gave Coombs judgment for 40% of the profit of the corporation with no deduction for income taxes; thus forcing Smith to bear the entire income tax due by The Squire out of his 60% and this in view that the joint venture agreement provided that the process of subdividing the land would be done through The Squire, Inc.

Had both parties not used The Squire as the agent to accomplish the project, then we could see that net profits would mean profits before taxation. However, so long as Mr. Coombs is receiving the benefit of the corporate shield, he ought not to be able to compel his associate to stand all of the corporate taxes out of his share of the earnings.

■ When people speak of the net profits of a corporation, they refer to the amount of earnings available for dividends and dividends cannot be paid in disregard of those charges called taxes.

■ Except for the determination of the term "net profit" as set out in the findings, we affirm. As to the basis for calculating the percentage of the net profit, we reverse the trial court and remand the case with directions to split the net profits available for dividends, to-wit: in the agreed ratio after deducting taxes. Each party will bear its own costs.

CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, Chief Justice (dissenting):

This is an appeal from a judgment incident to a joint venture agreement having to do with the promotion of a real estate subdivision. I think the trial court should be affirmed in toto, and hence dissent from the main opinion.

This case originally was tried to a jury resulting in a verdict in favor of defendant Coombs. The trial judge granted a new trial for one reason only: the question of admissibility of certain evidence anent the purchase price being considered to have been prejudicial. The parties stipulated that the judge could try the case without a jury, by reviewing the record and evidence adduced at the prior trial. This the trial court did and *came up with the same answers as had the jury*, after having indulged continued hearings, admitting additional evidence and taking the case under advisement, and entering written findings of fact and conclusions in pertinent part abstracted hereinafter. The main opinion in one fell swoop destroys the conclusions of two separate fact-finding agencies, which we have said many times are inviolate on appeal unless clearly shown to have been unsupported by the evidence.

The facts were: that in October 1969 a Joint Venture Agreement was executed between *Coombs and Vista Corporation* looking to development of a subdivision on property owned by The Squire, another corporation, wherein Coombs was to receive 40% of the net profits, was to sell at least seven lots per month, and Vista was to furnish not to exceed $150,000 for financing, that both parties contemplated immediate funds and sale of lots and all was to be completed in a year. Both were delayed, admittedly and without recrimination, and development costs, as frequently happens, exceeded those anticipated. A number of unanticipated events occurred

under which the parties seemed to live without any particular faultfinding, and the 40–60% bit was no problem for the parties, the jury or the judge,—until now. In January 1973, three years after the venture was initiated, plaintiff Smith acquired Vista's interest (so he is now Vista), Coombs had sold three fourths of the lots, although off schedule, but consented to, and Vista (and Smith) had approved the changes in promotion. Smith, for three years before, had been Vista's administrative assistant and was aware of the facts and course of dealing. Smith, without any reason save the profit temptation, so far as the trial court was concerned, then attempted to discharge Coombs as sales agent and advised him to sell no more lots, which Coombs ignored, selling a majority of the remaining lots, *all of which sales Smith accepted.* One of the lot buyers advised Smith she had assigned her interest in the lot to Coombs, which Smith refused to recognize.

The parties stipulated to an audit by a local firm in an effort to reconcile numerous other disputed claims set forth in the findings, and the court found that the Joint Venture Agreement was ambiguous in defining Coombs' 40% of the "net profits" from the sale of lots.

From the findings, the trial judge concluded: That the parties, by oral agreement, had *altered* the Joint Venture Agreement as to a) schedule for sale of lots, b) additional necessary promotional costs acquired by increasing of lot prices, and said that Vista had *waived* such original schedule, by *not* immediately financing, or requiring filing a plat earlier, and by accepting sales made by Coombs thereafter, plus diverting Coombs' effort to sell lots, to selling contracts for lots, by increasing sales prices of lots, all of which eventuated prior to the time Smith had acquired his interest,—with which alterations or "waivers" Smith was bound. Other conclusions were entered inimical to Smith's contentions which need no further specificity.

The court concluded that there was no cause of action for the claims of Smith and Squire, that Coombs was entitled to the lot assigned by the buyer mentioned above, and to a judgment of 40% of the net profits on the sale of lots, computed "prior to any accrual of income taxes of The Squire,"—reasoning that to arrive at "net profits from the sale of lots," as recited in the agreement, "the bona fide obligations of The Squire should be subtracted from the value of the Squire's assets." Certainly the income tax obligation is such an obligation, which if unpaid could be made a lien against the property by a Federal warrant filed with the County Clerk, in the nature of a judgment lien,—as effectively as a mechanic's lien or a first mortgage recorded in the County Recorder's Office. And just as certainly the majority of the court, under the facts of this case, would have to concede that such liens would have to be released to determine net profits under this joint venture agreement.

The plaintiffs have had the benefit of two trials, one by a jury and one by the court, independent of a jury. We are charged with a duty to recognize the deliberations of the fact finders, and this author believes that the evidence adduced, if believed, reasonably and amply supports the jury and the trial judge, irrespective of the fact that there may have been some discrepancies as to the understanding between the parties,—which, from a transcript containing some 250 pages of testimony,—are remarkably few,—as recounted in the briefs, and which do not appear to be of such prejudicial nature as to overcome the considerable weight attributable to other evidence found in the record.

Plaintiffs urge on appeal that the court erred in 1) not finding that Coombs broke his agreement by a) exceeding the development costs and b) failing to sell seven lots per month. Both contentions were first before the jury, and secondly, and independently, before the judge,—and it appears that the evidence amply supports a

voluntary change by both parties of the terms of the contract in those respects.

Again, the plaintiffs urge on appeal that the trial court erred in interpreting the plain terms of the contract,[1]—principally that part having to do with the 40% of net profit compensation. The absolute clarity in terms with respect to this aspect of the case that Smith contends for does not substantiate the rigidity of interpretation he claims. Percentage of net profit, as a numeral, may be clear, but certainly may be much more viable and malleable when related to the calculable "net profit" factor. The latter depends on what the parties may have contemplated. From the entire record here, no one should do other than confirm the conviction of the trial court to the effect that such intention conditioned the net profits on The Squire's assets and liabilities,—which of necessity, and as a basis for calculating net profits,—required assumption of such variables as tax liabilities incident to the development of the subdivision.

The isolated lot transaction between a buyer and Coombs was an exception to the ordinary course of disposal of the lots, born of a disagreement of the parties, whose doubt was resolved by the lower court in favor of Coombs.

I believe the jury, and the judge, independent of the jury, were not unreasonable in their appraisals of the facts, and that the trial judge was not prejudicially amiss in his canvass of the facts and his interpretation of the agreement and the parties' intent.

As to Smith's contention, not mentioned in the main opinion, that the question of "waiver" was not specially pleaded under Rule 8(c), Utah Rules of Civil Procedure, it seems obvious that the court entertained such term as the giving up of recognized rights as a consequence of a valid, voluntarily indulged, modification of the agreement by the parties signatory thereto, —and not to the employment of factors incident to an estoppel in pais. Assuming a question of estoppel were involved here, Coombs in the 4th Defense in his Answer, speaking to the question of failure to sell seven lots per month, asserted that "as an affirmative defense, defendant alleges that he was relieved" of such obligation and that "plaintiffs are therefore estopped" to pursue the matter,—which, in turn, would seem to satisfy the rule.

In my opinion, the majority members in this case have gone into the accounting business via a non sequitur conclusion about tax shields based on "dividends" that no one, as I recall, raised in this case except this court itself. My guess would be that the I.R.S. people would use different computers in assessing the tax liabilities of the parties in this case than has this court, —and consequently the true taxable income attributable to each.

1. We are not in disagreement with plaintiffs' authorities to the effect that a contract must be enforced according to its clear, plain terms and meaning.